UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Gregory F.,[1]

                Plaintiff,                       Case No.  23-cv-3787 (LMP/LIB)

v.                        **REPORT AND RECOMMENDATION**

Martin J. O'Malley,
*Commissioner of Social Security Administration*,

                Defendant.

_____

Plaintiff, Gregory F. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying his application for disability benefits. The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). This Court has jurisdiction over the claims under 42 U.S.C. § 405(g).

Pursuant to the Federal Supplemental Rules of Civil Procedure which govern actions seeking judicial review of a decision of the Commissioner of Social Security, the present action "is presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a brief requesting reversal of the Commissioner's final decision and remand to the Social Security Administration for an immediate award of benefits, or in the alternative, that the present action be remanded to the Social Security Administration for further consideration. [Docket No. 9]. Defendant filed a brief asking this Court to affirm the underlying decision denying Plaintiff's request for benefits and to dismiss this action. [Docket No. 10].

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by his name only his first name and last initial are provided.

For the reasons discussed herein, the undersigned recommends that Plaintiff's request for relief, [Docket No. 9], be **GRANTED in part** and **DENIED in part**, and Defendant's request for relief, [Docket No. 10], be **DENIED**.

## I.  Background

On November 5, 2021, Plaintiff filed an application for disability benefits. (Tr. 15, 194–195).[2] Plaintiff alleged that his disability began on September 19, 2019. (Tr. 194). The Commissioner initially denied Plaintiff's claim on December 17, 2021, and again, upon reconsideration, on May 19, 2022. (Tr. 15, 55–73). On June 17, 2022, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 15, 187–189).

Administrative Law Judge Manh Nguyen (hereinafter "ALJ") conducted a video hearing on April 4, 2023, at which Plaintiff was represented by legal counsel. (Tr. 15, 34–54). Plaintiff along with an independent vocational expert, Kelly Stroker ("IVE Stroker"), testified at the hearing. (Tr. 15, 34–54).

On June 2, 2023, the ALJ issued a decision denying Plaintiff's request for disability benefits. (Tr. 12–27). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 27).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–11). Subsequently, on October 17, 2023, the Appeals Council denied Plaintiff's request for review. (Tr. 1). As a result, the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 7], by the abbreviation "Tr." Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of each page of the record.

On December 12, 2023, Plaintiff filed this action. (Compl. [Docket No. 1]). Thereafter, this matter was presented to the Court for review pursuant to the parties' briefs, [Docket Nos. 9, 10], and the Court took the matter under advisement on the written submissions.

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge. 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the administrative law judge must follow a five-step sequential analysis. This analysis requires the administrative law judge to make a series of factual findings about the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security [through the administrative law judge] must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

The claimant bears the burden under the Social Security Act of proving that he is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the

claimant has demonstrated he cannot perform any of his prior, relevant work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**B. Appeals Council Review**

If the claimant is dissatisfied with the administrative law judge's decision, the claimant may request review by the Appeals Council, although the Appeals Council is not required to grant that request for review. See 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In the present case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1).

**C. Judicial Review**

If a claimant remains dissatisfied with the final decision of the Commissioner following the resolution of claimant's request for review to the Appeals Council, the claimant may seek judicial review in federal court. Judicial review of the administrative decision generally proceeds by considering the decision of the administrative law judge at each of the five steps discussed above.

Judicial review of the Commissioner's decision (through the administrative law judge) to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of

4

the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the administrative law judge. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the administrative law judge's finding merely because evidence exists in the administrative record to support a conclusion contrary to the Commissioner's findings. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the administrative law judge's decision, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009). Thus, the Court will not reverse the administrative law judge's "denial of benefits so long as the [administrative law judge's] decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the administrative law judge "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id.

**III. Decision Under Review**

In the present case, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engage in substantial gainful activity since the date of his alleged onset date, September 19, 2019. (Tr. 18). This finding is not in dispute. The Court will refer to the time period between September 19, 2019, and the date of the ALJ's decision as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had the following severe impairments: "status/post stroke, bilateral carpal tunnel syndrome (CTS), obstructive sleep apnea (OSA), obesity, major depressive disorder, and generalized anxiety disorder." (Tr. 18). Plaintiff does not challenge the findings made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18–20). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or equaled listings 11.04, 11.14, 12.04, and 12.06. (Tr. 18–20). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can perform frequent handling and fingering. The claimant can have no exposure to concentrated occupational vibration. There can be no commercial driving or operation of moving machinery. He can never work around hazards, such as unprotected heights or unguarded, uncovered moving machinery. The claimant can understand, remember, and carry out simple instructions. He can never work at a production rate pace, such as assembly line work. He can tolerate occasional changes in a routine work setting. He can have occasional interactions with supervisors and coworkers. He can have no interactions with the general public.

(Tr. 20). Plaintiff challenges this RFC determination made by the ALJ.

6

In making this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"; however, the ALJ also concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 21). Plaintiff does not directly challenge this credibility determination by the ALJ, but Plaintiff does indirectly challenge this determination to the extent it is based on the challenged RFC determination.[3]

Based on his RFC determination and relying on the testimony from the independent vocational expert, IVE Stroker, the ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 26). Plaintiff does not challenge this finding by the ALJ.

At step five, the ALJ found that there were other jobs that existed in significant numbers in the national economy which Plaintiff could perform. (Tr. 26–27). Here again relying upon testimony from the independent vocational expert, IVE Stroker, the ALJ specifically found that among the occupations Plaintiff would be able to perform were "janitor" of which there are 80,000 positions in the national economy; "kitchen helper" of which there are 100,000 positions in the national economy; and "store laborer" of which there are 50,000 positions in the national economy. (Tr. 27). Although Plaintiff does not directly challenge this finding, Plaintiff implicitly challenges this finding based on his argument regarding the ALJ's RFC determination.

---

[3] "Social Security Ruling 16-3p eliminates the use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020). SSR 16-3p applies to the present case, "but it largely changes terminology rather than the substantive analysis to be applied," and in discussing said determination, Courts have continued to use the "credibility" terminology. Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020).

Based on his finding at each of the steps of the sequential analysis, the ALJ concluded that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 27).

## IV. Analysis

Plaintiff asserts one overarching argument in his appeal of the ALJ's decision: The ALJ erred in his evaluation of the medical opinion evidence in the record. (Plf.'s Mem. [Docket No. 9]). More specifically, Plaintiff argues that the ALJ erred in his evaluation of the opinions from Mr. Issac Boike, M.A., L.P.C.C.; Dr. Bernard Quebral, M.D.; and the consulting physicians from the Social Security Administration. (Id. at 14–18).

### A. Law Governing the Evaluation of Opinion Evidence

The relevant regulations governing the weighing of opinion evidence were revised for claims filed on or after March 27, 2017. See 20 C.F.R. § 404.1520c(a). Because Plaintiff filed his application for disability benefits on November 5, 2021, the new regulations apply here. See Id.

The new regulations eliminate the "treating physician" rule. Id.; see Austin v. Kijakazi, 52 F.4th 723, 728 (8th Cir. 2022). Under the new regulations, the administrative law judge does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the administrative law judge evaluates the persuasiveness of all medical opinions in the record by considering the following five factors: (1) supportability;[4] (2) consistency;[5] (3) relationship with the claimant; (4) specialized training of the medical source; and (5) other factors. 20 C.F.R. § 404.1520c(c).

---

[4] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 1520c(c)(1).

The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2); <u>Austin</u>, 52 F.4th at 728. The ALJ is required to explain how these two factors were considered. 20 C.F.R. § 404.1520c(b)(2); <u>Bonnett v. Kijakazi</u>, 859 F. App'x 19, 20 (8th Cir. 2021). The ALJ may also, but is not required to, explain how the remaining factors were considered. <u>See</u> 20 C.F.R. § 404.1520c(b)(2). However, where the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ "will articulate how [they] considered the other" enumerated factors "for those medical opinions or prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b)(3).

**B.  The ALJ Erred in his Evaluation of Mr. Boike's Medical Opinion**

Mr. Issac Boike is a licensed clinical professional counselor who was Plaintiff's treating therapist during the relevant time period. (<u>See</u> Tr. 1005–1007). On November 2, 2022, Mr. Boike completed a Medical Source Statement in which he opined that Plaintiff had moderate limitations in his ability to carry out short, simple instructions; his ability to understand and remember detailed instructions; and his ability to interact appropriately with the public. (Tr. 1005–1006). Mr. Boike also opined that Plaintiff had marked limitations in his ability to carry out detailed instructions, his ability to make judgments on simple work-related decisions, and his ability to interact appropriately with supervisors and coworkers. (Tr. 1005–1006). Mr. Boike further opined that Plaintiff had extreme limitations in his ability to respond "appropriately to work pressures in a usual work setting," as well as, his ability to respond "appropriately to changes in a routine work setting." (Tr. 1005–1006).

---

[5] "Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 1520c(c)(2).

In the present case, the ALJ found Mr. Boike's opinion to be "unpersuasive." (Tr. 25). After summarizing Mr. Boike's opinion, the ALJ's discussion of Mr. Boike's opinion is as follows:

> This opinion is not consistent with the claimant's mental status examinations, which show depressed or anxious mood, crying spells, flat affect, occasional memory problems, generally intact concentration, logical thought process, no hallucinations or delusions, no suicidal ideation, good impulse control, and fair to good judgment and insight. I find this opinion to be unpersuasive.

(Tr. 25). This is the entirety of the ALJ's discussion of Mr. Boike's opinion.

Because the ALJ did not find any portion of Mr. Boike's opinion to be equally well-supported as any other opinion about the same issue, the ALJ is required here to explain only how the supportability and consistency factors were considered. 20 C.F.R. § 404.1520c(b). On the record now before the Court, the ALJ failed to do so.

In his discussion of Mr. Boike's opinion, the ALJ addressed only the consistency factor. (Tr. 25). In other words, the ALJ's discussion of Mr. Boike's opinion addressed only whether the opinion was consistent with the other evidence in the record. (See Tr. 25). The ALJ failed to proffer any discussion of the supportability factor, to wit: whether Mr. Boike's opinion was supported by Mr. Boike's own treatment notes and the objective medical evidence presented by Mr. Boike himself. The ALJ's failure to discuss the supportability factor regarding Mr. Boike's opinion represents a sufficient, independent legal error warranting remand of the present action. See, e.g., Lucus v. Saul, 960 F.3d 1066, 1069–70 (8th Cir. 2020) (finding remand required where the ALJ discredited a physician's opinion without discussing factors contemplated in the regulation; stating, "The failure to comply with SSA regulations is more than a drafting issue, it is legal error."); Bonnett v. Kijakazi, 859 F. App'x 19, 20 (8th Cir. 2021) (finding remand required because "while the ALJ adequately evaluated the supportability of [the plaintiff's physician's] opinion, she did not address whether his opinion was consistent with the other evidence of record, as required by the

applicable regulation"); Samantha A. v. O'Malley, No. 22-cv-3119 (TNL), 2024 WL 841270, at
*5–6 (D. Minn. Feb. 28, 2024); Violet G. v. Kijakazi, No. 21-cv-2105 (TNL), 2023 WL 2696594, at
*6–7 (D. Minn. Mar. 29, 2023).

Although Defendant is correct that the ALJ is not required to use the "magic words," such as
"supportability," to demonstrate that he considered the supportability factor as required by 20
C.F.R. § 404.1520c(b), "it must be clear [the required factors] were addressed." Kimm W. v.
O'Malley, No. 23-cv-2497 (JMB/DLM), 2024 WL 3896613, at *6 (D. Minn. July 15, 2024)
(quoting Diane W. v. Kijakazi, No. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Minn.
Sept. 22, 2022)), report and recommendation, 2024 WL 3890913 (D. Minn. Aug. 21, 2024); see
Samantha A., 2024 WL 841270, at *5. In the present case, the ALJ's decision fails to demonstrate
that the "supportability" factor was considered in the ALJ's evaluation of Mr. Boike's opinion. The
ALJ's decision simply lacks any discussion regarding whether Mr. Boike's opinion is supported by
the medical evidence and treatment notes from Mr. Boike himself.

Defendant attempts to save the ALJ's decision arguing that Mr. Boike's opinion was
properly discounted because it was purportedly on a check-the-box form and because the written
explanations provided by Mr. Boike on the form purportedly contradict his opined limitations. (See
Def.'s Mem. [Docket No. 10] at 10–11). In making this argument, however, Defendant improperly
relies on rationales which were not proffered by the ALJ in his discussion of Mr. Boike's opinion.

Defendant may not demonstrate that the ALJ's evaluation of Mr. Boike's opinion is
supported by substantial evidence by relying on rationales other than those proffered by the ALJ.
This Court's review of the Commissioner's decision, through the ALJ, is limited to the grounds
identified in the ALJ's decision. See, e.g., Bonnett, 859 F. App'x at 20; Gerald L. v. Kijakazi, No.
20-cv-1352 (KMM/TNL), 2022 WL 4472749, at *25 (D. Minn. July 26, 2022), report and

recommendation adopted, 2022 WL 4465958 (D. Minn. Sept. 26, 2022); Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); Healtheast Bethesda Lutheran Hosp. and Rehab. Ctr. v. Shalala, 164 F.3d 415, 418 (8th Cir. 1998); Sara Z. v. Kijakazi, No. 22-cv-226 (DSD/TNL), 2023 WL 5753627, at *29 (D. Minn. July 31, 2023), report and recommendation adopted, 2023 WL 5624006 (D. Minn. Aug. 31, 2023).

The Court's review of the Social Security Administration's decision, through the administrative law judge, is limited to the consideration of "the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider whether to pursue a new rationale for its decision or perhaps to change its decision." Shanda v. Colvin, No. 14-cv-1838 (MJD/JSM), 2015 WL 4077511, at *29 (D. Minn. July 6, 2015). The ALJ's decision cannot be sustained on the basis of the post-hoc rationalizations of appellate counsel. See Stacey S. v. Saul, No. 18-cv-3358 (ADM/TNL), 2020 WL 2441430, at *15 (D. Minn. Jan. 30, 2020), report and recommendation adopted, 2020 WL 1271163 (D. Minn. Mar. 17, 2020).

Hypothetically, it may be true that in reaching his decision on the persuasiveness of Mr. Boike's opinion the ALJ undertook a rationalization similar to the post-hoc argument now proffered by Defendant, but the ALJ did not offer any such rational in his decision. The Court cannot assume any such rationale on appeal. See Stacey S., 2020 WL 2441430, at *15. "It is not the role of this Court to speculate on the reasons that might have supported the ALJ's decision or supply a reasoned basis for that decision that the ALJ never gave." Stacey S., 2020 WL 2441430, at *15 (collecting cases); see Gerald L., 2022 WL 4472749, at *25.

Moreover, although the ALJ provided some discussion of the consistency factor, the ALJ's discussion of the consistency factor is an insufficient basis for the Court to determine whether substantial evidence supports the ALJ's conclusion that Mr. Boike's opinion is inconsistent with the

record as a whole. As noted above, the ALJ concluded that Mr. Boike's opinion was not consistent with Plaintiff's "mental status examination, which show depressed or anxious mood, crying spells, flat affect, occasional memory problems, generally intact concentration, logical thought process, no hallucinations or delusions, no suicidal ideation, good impulse control, and fair to good judgment and insight." (Tr. 25). The ALJ did not, however, cite to any specific record or mental status examination in support of his conclusion here. (See Tr. 25).

"Generic references to mental status examinations are insufficient to" satisfy the ALJ's duty to develop the record sufficiently enough to permit meaningful review on appeal. Dianna L.B. v. Saul, 19-cv-2561 (TNL), 2020 WL 4586822, at *5 (D. Minn. Aug. 10, 2020).[6] This is especially true in circumstances, like the present case, in which the Court's review of the generically referenced records contain medical evidence which is "both consistent and inconsistent" with the ALJ's conclusion. See, e.g., Jason H. v. O'Malley, No. 23-cv-743 (WMW/LIB), 2024 WL 689594, at *6 (D. Minn. Jan. 4, 2024) (quoting Dianna L.B., 2020 WL 4586822, at *5), report and recommendation adopted, 2024 WL 471645 (D. Minn. Feb. 7, 2024).

Although the ALJ did not provide any citations to the record in his discussion of Mr. Boike's opinion, the ALJ's statements regarding Plaintiff's mental status examinations in his discussion of Mr. Boike's opinion are mirrored in the ALJ's recounting of Plaintiff's medical history which did include generic citations to the record. However, even if the Court were to assume that these generic citations from the ALJ's recounting of Plaintiff's medical history were meant to be incorporated into the ALJ's discussion of Mr. Boike's opinion, it would still be insufficient to

---

[6] The ALJ has a duty to sufficiently develop the record to permit meaningful review on appeal. See, e.g., Noerper v. Saul, 964 F.3d 738, 747 (8th Cir. 2020). This duty to develop the record "arises from the simple fact that the disability determination process is not an adversarial process," and thus, the duty to develop the record "exists alongside the claimant's burden to prove [their] case." Id. Moreover, the ALJ's duty exists even when a claimant is represented by counsel. Id. The Eighth Circuit Court of Appeals has "repeatedly recognized this duty," and it has "remanded for further development of the record not only where evidence of functional limitations is lacking, but also where the record presents conflicting medical opinions as to which the Commissioner fails to explain a choice." Id.

satisfy the ALJ's duty to sufficiently develop the record to permit meaningful review because the ALJ's citations to the record in his recounting of Plaintiff's medical history are merely generic citations to large swaths of the record. See Dianna, 2020 WL 4586822, at *5. The ALJ does not provide any specific or targeted citations in his description of the relevant portions of Plaintiff's medical history. (See, e.g., Tr. 19–20).

For example, in recounting Plaintiffs' medical history the ALJ asserts that Plaintiff's "attention and concentration were generally intact" during mental status examinations, but in support of that assertion, the ALJ generically cites to 193 pages in the record without any explanation as to what portion of the referenced pages supports his assertion. (See Tr. 20) (citing Tr. 313–447, 1620–1626, 1931–1981). The insufficiency of these generic citations is compounded by the fact that the records cited contain large portions of medical records which are unrelated to mental status examinations. (See Tr. 315–352) (providing medical record for "[r]outine general medical examination[s]" related to Plaintiff's hypertension diagnosis and left elbow pain).

The ALJ's conclusion that Mr. Boike's opinion is not consistent with Plaintiff's mental status examination which show no suicidal ideation, (Tr. 25), is a representative example of the ALJ's failure to adequately develop the record. Although the portion of the record to which the ALJ generically cited in his recounting of Plaintiff's medical history contains some medical appointments at which Plaintiff did not report suicidal ideation, these same records contain medical appointments at which Plaintiff did report at least some suicidal ideation, and at least one medical professional provided Plaintiff with a diagnosis of suicidal ideation. (See Tr. 1621, 1623). The ALJ fails to articulate any explanation to resolve this conflict.

This is not to say an ALJ's conclusion is proper only when supported by all the evidence in the record. Rather, it is the ALJ's obligation to resolve the conflict between the incongruous

evidence in the record. However, the ALJ's generic reference to large swaths of the record without any corresponding discussion does not allow this Court to conduct a meaningful review of the ALJ's decision resolving the conflicting medical evidence in the record.

In summation, the Court finds that the ALJ failed to properly evaluate Mr. Boike's opinion in a manner consistent with 20 C.F.R. § 404.1520c by wholly failing to discuss the supportability of Mr. Boike's opinion. Moreover, in discussing the consistency of Mr. Boike's opinion, the ALJ failed in his duty to develop the record sufficiently to permit meaningful review on appeal. The ALJ's failures here warrant remand. Bonnett, 859 F. App'x at 20; Noerper, 964 F.3d at 747.

### C. The ALJ Erred in his Evaluation of Dr. Quebral's Medical Opinion

Dr. Bernard Quebral, M.D., was Plaintiff treating physician from at least September 20, 2018, through the date of the ALJ's decision. (See Tr. 444, 1927–1930). On December 7, 2022, Dr. Quebral completed a Medical Source Statement regarding Plaintiff's physical limitations and abilities. (Tr. 1008–1011, 2285–2288). In that Medical Source Statement, Dr. Quebral opined that Plaintiff could occasionally lift twenty-five pounds; occasionally perform various postural activities such as balancing, kneeling, crouching, and stooping; and occasionally perform manipulation with his hands. (Tr. 1008–1011, 2285–2288). Dr. Quebral further opined that Plaintiff could frequently lift twenty pounds, but Plaintiff could never climb or crawl. (Tr. 1008–1009, 2285–2286). Dr. Quebral also opined that Plaintiff required at least a two hour break each day from standing and walking. (Tr. 1008, 2285).

In the present case, the ALJ found Dr. Quebral's opinion to be "unpersuasive." (Tr. 25). After summarizing Dr. Quebral's opinion, the ALJ's discussion of Dr. Quebral's opinion is as follows:

> This opinion is not consistent with the claimant's examination findings which show fatigue, obesity, full range of motion, no facial droop, intact cranial nerves, equal

grips, 5/5 strength, intact sensation, normal reflexes, intact coordination, and normal gait. I find this opinion to be unpersuasive.

(Tr. 25). This is the entirety of the ALJ's discussion of Dr. Quebral's opinion.

Because the ALJ did not find any portion of Dr. Quebral's opinion to be equally well-supported as any other opinion about the same issue, the ALJ is required here to explain only how the supportability and consistency factors were considered. 20 C.F.R. § 404.1520c(b). On the record now before the Court, the ALJ failed to do so.

In his discussion of Dr. Quebral's opinion, the ALJ addressed only the consistency factor. (Tr. 25). In other words, the ALJ's discussion of Dr. Quebral's opinion addressed only whether the opinion was consistent with the other evidence in the record. (See Tr. 25). The ALJ failed to proffer any discussion of the supportability factor, i.e., whether Dr. Quebral's opinion was supported by Dr. Quebral's own treatment notes and the objective medical evidence presented by Dr. Quebral himself. The ALJ's failure to discuss the supportability factor regarding Dr. Quebral's opinion represents a sufficient, independent legal error warranting remand of the present action. See, e.g., Bonnett, 859 F. App'x at 20; Lucus, 960 F.3d at 1069–70; Samantha A., 2024 WL 841270, at *5–6; Violet G., 2023 WL 2696594, at *6–7.

Moreover, although the ALJ provided some discussion of the consistency factor relative to Dr. Quebral's opinion, the ALJ's discussion of the consistency factor here is an insufficient basis for the Court to determine whether substantial evidence supports the ALJ's conclusion that Dr. Quebral's opinion is inconsistent with the record as a whole. As noted above, the ALJ concluded that Dr. Quebral's opinion was not consistent with Plaintiff's "examination findings which show fatigue, obesity, full range of motion, no facial droop, intact cranial nerves, equal grips, 5/5 strength, intact sensation, normal reflexes, intact coordination, and normal gait." (Tr. 25). Here again, however, the ALJ failed to cite to any specific record or examination finding in support of his

conclusion. (<u>See</u> Tr. 25). For the same reasons discussed above relative to the ALJ's discussion of Mr. Boike's opinion, the ALJ's discussion regarding the consistency of Dr. Quebral's opinion represents a failure of the ALJ to sufficiently develop the record to permit meaningful review on appeal. <u>See, e.g.</u>, <u>Dianna L.B.</u>, 2020 WL 4586822, at *5; <u>Jason H.</u>, 2024 WL 689594, at *6 (quoting <u>Dianna L.B.</u>, 2020 WL 4586822, at *5).

Although the ALJ did not provide any citations to the record in his discussion of Dr. Quebral's opinion, the ALJ's statements regarding Plaintiff's examinations in the ALJ's discussion of Dr. Quebral's opinion are largely mirrored in the ALJ's recounting of Plaintiff's medical history relative to the results of Plaintiff's various physical examinations. (<u>See</u> Tr. 23) (noting that while Plaintiff reported ongoing fatigue during his physical examination, the objective tests demonstrated that he had a full range of motion, equal grip strength, no facial droop, 5/5 muscle strength, intact sensation, normal coordination, and a normal gait). The ALJ did not, however, provide any specific citations to the record in his interpretive summary of the results of Plaintiff's physical examinations. (<u>See</u> Tr. 23). The only citation to the record by the ALJ in his summary of Plaintiff's physical examination is a single, generic citation following the last sentence in the ALJ's overall summary of the results from Plaintiff's physical examinations. (<u>See</u> Tr. 23).

Even if the Court were to assume solely for the sake of argument that the ALJ's single citation following his summary of the results of Plaintiff's physical examinations was intended to be a cumulative citation in support of the ALJ's entire discussion of Plaintiff's physical examinations, the ALJ still failed to develop the record sufficiently to permit meaningful review because this cumulative citation is a generic citations to a span of more than 1,000 pages of the record. (<u>See</u> Tr. 23) (citing Tr. 313–704, 1316–1981). Such a generic reference to a large portion of the record without any discussion or indication as to the specific portion of the record upon which the ALJ

17

relied in reaching his conclusion is insufficient to satisfy the ALJ's duty to develop the record sufficiently enough to permit meaningful review on appeal. <u>Dianna L.B.</u>, 2020 WL 4586822, at *5.

As more fully discussed above, generic citations to the record without any discussion as to the specific portions of the record upon which the ALJ relied is especially insufficient to satisfy the ALJ's duty to develop the record sufficiently enough to permit meaningful review in circumstances, like the present case, where the Court's review of the generically referenced records contain medical evidence which is "both consistent and inconsistent" with the ALJ's conclusion. <u>See, e.g.</u>, <u>Jason H.</u>, 2024 WL 689594, at *6. Again, this is not to say that an ALJ's conclusion is proper only when supported by all the evidence in the record. Rather, it is the ALJ's obligation to resolve the conflict between the conflicting evidence in the record. However, the ALJ's generic reference to a large portion of the record without any corresponding discussion does not allow this Court to conduct a meaningful review of the ALJ's conclusion.

In summation, the Court finds that the ALJ failed to properly evaluate Dr. Quebral's opinion in a manner consistent with 20 C.F.R. § 404.1520c by wholly failing to discuss the supportability of Dr. Quebral's opinion. Moreover, in discussing the consistency of Dr. Quebral's opinion, the ALJ failed in his duty to develop the record sufficiently to permit meaningful review on appeal. The ALJ's failures here warrant remand. <u>Bonnett</u>, 859 F. App'x at 20; <u>Noerper</u>, 964 F.3d at 747.

**D. Plaintiff's Other Arguments**

The ALJ's failure to adequately develop the record regarding his evaluation of the medical opinions of Mr. Boike and Dr. Quebral necessarily means that the ALJ failed in his duty to adequately develop the record to permit meaningful review of the ALJ's RFC determination and his overall decision. Thus, the Court cannot conclude that the ALJ's RFC determination or ultimate decision are supported by substantial evidence.

Because the Court finds that the ALJ's RFC determination is not supported by substantial evidence, the Court need not consider Plaintiff's alternative arguments in support of remand. Remand for further administrative proceedings on the issues already discussed by the Court will necessarily alter the nature of the circumstances underlying each of Plaintiff's other arguments. However, one issue warrants brief discussion here.

Plaintiff argues that the ALJ erred in assigning persuasive weight to the opinion of State Agency Consultant Dr. John Bordwell, M.D., because Dr. Bordwell's May 12, 2022, review of the record predates the submission of nearly 1,000 pages of the medical record, including all medical records related to Plaintiff's stroke which occurred after Dr. Bordwell's review of the medical record. (Plf.'s Mem. [Docket No. 9] at 17–18). Defendant argues that although Dr. Bordwell did not have all the medical records at the time of his review, the ALJ did not err in assigning persuasive weight to Dr. Bordwell's opinion because the ALJ independently reviewed and considered all of the medical evidence submitted after Dr. Bordwell's review. (Def.'s Mem. [Docket No. 10] at 12–13).

It is generally well-settled that "[t]he fact that a state agency medical consultant did not have access to all of the records does not prevent the ALJ from assigning significant weight to the consultant's assessment if the ALJ conducted an independent review of the evidence." Vue v. Colvin, No. 13-cv-357 (ADM/FLN), 2014 WL 754873, at *9 (D. Minn. Feb. 26, 2014) (internal quotation omitted). Defendant, however, fails to highlight any case in which this rational was applied to circumstances substantively similar to the present case where an entirely new "severe impairment" (Plaintiff's stroke and his poststroke status) arose after the state agency medical consultant reviewed the medical record. (See Def.'s Mem. [Docket No. 10]).

This is not a circumstance in which the ALJ reviewed ongoing treatment notes after the state agency consultant's review of previous medical records regarding the same impairment. Instead, an

entirely new impairment arose after Dr. Bordwell reviewed the medical records. This new, severe impairment having arisen after Dr. Bordwell's review of the record combined with the fact that "[s]ome medical evidence must support the determination of the claimant's RFC," Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001), makes it is unclear if, under the circumstances of the present case, the ALJ's review of the records postdating Dr. Bordwell's review is sufficient to permit the ALJ to assign persuasive weight to Dr. Bordwell's opinion.

The question of whether the ALJ's review of the medical records postdating Dr. Bordwell's review is sufficient to permit the ALJ to assign persuasive weight to Dr. Bordwell's opinion in formulating the RFC determination is further complicated by the fact that the ALJ discounted the only medical opinion (Dr. Quebral's opinion) in the record regarding the effects of Plaintiff's stroke on Plaintiff's ability to function in the workplace. Although the formation of a claimant's RFC is within the purview of an ALJ's administrative determinations, "a claimant's RFC is a medical question," and therefore, "an ALJ's assessment of [the RFC] must be supported by some medical evidence of the claimant's ability to function in the workplace." Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017) (quoting Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008)). The only medical opinion in the record regarding the effects of Plaintiff's stroke upon his ability to perform work-related activities is Dr. Quebral's opinion, but the ALJ discounted Dr. Quebral's opinion. Put differently, after the ALJ discounted Dr. Quebral's opinion, "there is no medical evidence, i.e., a discussion by a doctor or other professional, which indicates" the effects of Plaintiff's stroke upon his ability to perform work-related activities. See Pate-Fires v. Astrue, 564 F.3d 935, 946 (8th Cir. 2009).

The circumstances of the present case create a unique conflict between the ALJ's authority to interpret the record, including medical opinions, and the restrictions on an ALJ's ability to infer

his own medical opinion. On the one hand, the law provides that the ALJ may assign persuasive weight to a state agency consultant's opinion even when said opinion is based on a review of an incomplete record, if the ALJ, after reviewing the records submitted following the state agency consultant's opinion, determines the newer records are consistent with the state agency consultant's opinion. Vue, 2014 WL 754873, at *9.[7] On the other hand, however, the ALJ is not permitted to review and interpret the objective medical evidence or treatment notes in the record to reach his own inferences regarding a claimant's ability to perform work-related activities. See, e.g., Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003); Pamela K. v. Kijakazi, No. 21-cv-690 (ECW), 2022 WL 2835069, at *14 (D. Minn. July 20, 2022); Thesing v. Colvin, No. 13-cv-1079 (JRT/JSM), 2014 WL 3890372, at *23–25 (D. Minn. Aug. 8, 2014); Brown v. Saul, No. 19-cv-806 (PLC), 2021 WL 1222113, at *7–8 (E.D. Mo. Mar. 31, 2021) ("Unless the inferences are supported by opinions from treating or consultive experts, they do not constitute substantial evidence."). In circumstances, like the present case, in which an entirely new severe impairment arose after the state agency consultant's opinion and the ALJ discounted the only medical opinion in the record regarding the new severe impairment, these two legal tenets seem to conflict.

The Court need not resolve this issue here, however, because remand for further administrative proceedings on the issue of the ALJ's consideration of the opinions of Mr. Boike and Dr. Quebral will necessarily require reevaluation of the opinions of the state agency consultants.

### E.  Type of Remand

The decision remains for the undersigned to determine whether to recommend remanding the present case to the Social Security Administration for further consideration or for entry of an

---

[7] It is, however, not evident to the Court how a state agency consultant's opinion regarding a claimant's physical limitations could be consistent, or for that matter inconsistent, with a medical record which contain a new, severe physical impairment entirely unknown to the state agency consultant.

immediate award of benefits. The Court finds that remand for further consideration is appropriate in the present case.

After determining that the Commissioner's decision is not supported by substantial evidence, a reviewing court can reverse and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. Where there is conflicting evidence in the record, the Court should remand the case back to the Commissioner for further consideration. See Id.

While it is possible that Plaintiff will be entitled to benefits, on the present record, this Court cannot say that such a determination can be made as a matter of undisputed fact. Consequently, the Court declines to recommend remand for an immediate award of benefits. Although there is evidence suggesting that Plaintiff is entitled to an award of benefits, there is also evidence to the contrary, and the evidence in support of Plaintiff being awarded benefits cannot be said to be so overwhelming as to permit the Court to make an award of benefits at this time. Instead, the Court recommends that the present case be remanded to the Commissioner so that a determination may be made in a manner consistent with this Report and Recommendation and on the medical evidence in the record.

Thus, to the extent Plaintiff seeks an Order of this Court reversing the Commissioner's final decision and remanding this proceeding to the Social Security Administration for an immediate award of benefits, the undersigned recommends that Plaintiff's request be **DENIED**. To the extent Plaintiff seeks an Order of this Court remanding the present action to the Social Security

Administration for further administrative proceedings consistent with this Report and Recommendation, the undersigned recommends that Plaintiff's request be **GRANTED**.

## V.  Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's request for relief, [Docket No. 9], be **GRANTED in part** and **DENIED in part**, as set forth above;

2. Defendant's request for relief, [Docket No. 10], be **DENIED**; and

3. The above captioned matter be **REMANDED** to the Social Security Administration, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Report and Recommendation.


Dated:  January 7, 2025                                      s/Leo I. Brisbois
                                                            Hon. Leo I. Brisbois
                                                            United States Magistrate Judge

## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).